OPINION OF THE COURT
Israel Rubin, J.
Petitioner seeks an order pursuant to CPLR article 78 annulling as untimely certain deficiency notifications promulgated by respondent in accordance with General Business Law § 352-e (2). Petitioner further seeks an order, pursuant to CPLR 3001, declaring that its condominium offering plan is deemed accepted for filing and directing respondent to issue a letter to that effect.
Petitioner submitted its preliminary offering plan to respondent on January 30, 1987. It is undisputed that timely notice of deficiencies in the report of the engineer regarding the subject premises was given to petitioner in a memorandum dated June 17, 1987. What is in dispute in this proceeding are subsequent notices of deficiencies issued by respondent, which *310 petitioner maintains were all issued after the six-month period provided in General Business Law § 352-e (2).
The statute provides for the mandatory filing with the Attorney-General of any offering plan or prospectus which invites participation in a real estate venture through the purchase of securities. No offering for sale of any such securities may be made until the Attorney-General furnishes a letter stating that the offering has been accepted for filing or, in the alternative, issues written notification indicating the deficiencies in the offering which preclude its acceptance for filing. The letter or deficiency notice is to be issued within 30 days after submission of the offering plan except "that in the case of a building or group of buildings to be converted to cooperative or condominium ownership which is occupied in whole or in part for residential purposes, such letter or notification shall be issued in not sooner than four months and not later than six months from the date of submission of such filing” (General Business Law § 352-e [2], as amended by L 1981, ch 1042, § 1).
Among the exhibits attached to the moving papers is a letter from the New York State Department of Law dated August 1, 1987 which contains a "partial list of deficiencies” different from and in addition to those contained in the memorandum of June 17. Also included in the exhibits is a letter from the Department of Law dated September 2, 1987 containing another "partial list of deficiencies” considerably more extensive than that contained in the letter dated August 1.
The first paragraph states: "Please find that I have enclosed a list of deficiencies relating to the proposed offering plan for 2647 Broadway. This list will supplement the deficiencies which were communicated to you by letter dated August 1, 1987 (copy enclosed for your reference).”
Petitioner maintains, however, that this so-called reference copy was the first notice it ever received of the deficiencies allegedly communicated in the letter dated August 1. It is petitioner’s position that notification of the deficiencies contained in the letters dated August 1, and September 2, 1987 together with deficiencies noted in memoranda dated August 21, and November 16, 1987 was issued after the expiration of the statutory six-month notification period and such notices are therefore untimely and cannot be employed by respondent to delay acceptance of the offering plan.
*311 Respondent, in its answer, includes an affidavit of the attorney responsible for reviewing the offering plan. With regard to the letter dated August 1, 1987 it states, "The letter was prepared on July 29, 1987, addressed to sponsor’s counsel and placed in the office out going [sic] mail box on that day. The deficiency letter bears the date August 1, 1987. On information and belief that date is a typographical error.”
Respondent may attempt to prove the actual date of its letter by parol evidence (Draper v Snow, 20 NY 331 [1854]). However, it must be observed that the submitted statement falls far short of an affidavit of service. The mere fact that the letter was placed in an office out box hardly established its passing into the custody of the United States Postal Service. Respondent has offered no affidavit by someone with personal knowledge as to office practice for the collection of outgoing mail and its delivery into the care of postal authorities. In addition, the allegation that the date of its letter (which, curiously, is a Saturday) is a typographical error would carry considerably more weight if attested to by the affidavit of the typist whose initials appear on the letter rather than that of an attorney upon mere "information and belief’. Pursuant to CPLR 409 (b), conclusory assertions do not suffice to meet respondent’s burden to lay bare his proof and show evidentiary facts in support of his defense (Matter of 22 Park Place Coop. v Board of Assessors, 102 AD2d 893 [2d Dept 1984]).
The time limit imposed by General' Business Law § 352-e (2) is mandatory, not discretionary (Matter of Gonkjur Assocs. v Abrams, 82 AD2d 683 [1st Dept 1981], affd 57 NY2d 853 [1982]). Respondent’s attempt to establish timely notification of the deficiencies purportedly communicated in the letter dated August 1, 1987 is entirely unpersuasive. It is clear that the burden of establishing notice in accordance with statutory requirements rests upon the agency obliged to furnish it (Matter of MacLean v Procaccino, 53 AD2d 965 [3d Dept 1976]). It is also clear that no presumption of receipt arises until actual mailing is established (Capra v Lumbermens Mut. Cas. Co., 43 AD2d 986 [3d Dept 1974]). Nor does it avail respondent to raise the presumption of mailing in the ordinary course of business (Gardam & Son v Batterson, 198 NY 175 [1910]) because the admitted postdating of its letter effectively rebuts any presumption that ordinary business practice was observed in this matter. Therefore, this court is constrained to conclude that respondent’s notice of deficiencies dated August 1, 1987 is untimely on its face and that respon *312 dent has failed to establish that it was issued at a time prior to the date contained in the writing. Given the significance of timely notice, in situations such as this where expiration of the prescribed statutory period is impending, respondent would be well advised to adopt the simple expedient of sending deficiency notices by certified mail and obtaining a return receipt.
In its brief respondent advances two additional arguments in defense of the timeliness of its issuance of deficiency notices. The first is predicated upon waiver, contending that petitioner’s conduct in submitting responses to its timely notice of June 17 and in participating in further discussions with the Department of Law warrants a finding that petitioner has waived its objections as to the timeliness of respondent’s subsequent deficiency notices. However, petitioner vociferously disputes participating in "lengthy telephone conversations” alleged in respondent’s brief and submits a telephone log and a letter to respondent’s reviewing attorney which document numerous unsuccessful attempts by petitioner’s attorney to reach her in order to discuss stated deficiencies in the plan. In addition, the letter from petitioner’s attorney specifically asserts that the alleged deficiencies contained in respondent’s letters of August 1 and September 2 are untimely and recites that it is "submitted without prejudice to any of the rights of the Sponsor, each of which is specifically reserved.”
Waiver is the voluntary abandonment or relinquishment of a known right (Jefpaul Garage Corp. v Presbyterian Hosp., 61 NY2d 442 [1984]). While it may be inferred from the conduct of the parties, it will not be found in the face of clear and unambiguous language to the contrary nor to frustrate the reasonable expectations of the parties (supra). Respondent has failed to demonstrate that the circumstances presented by the matter at bar constitute waiver, such as by continuing to respond to respondent’s deficiency notices over a period of several months (see, Matter of Parilex, Inc. v Abrams, 86 AD2d 541 [1st Dept 1982]).
Respondent’s second argument in favor of the timeliness of its subsequent deficiency notices is predicated upon the timeliness of its notice of June 17. Petitioner responded to the June 17 notice with a submission received by respondent on August 21. Respondent, in its brief, contends, "Respondent promptly [the same day] issued additional deficiency comments in response to petitioner’s August 21st submission.” The implica *313 tion is that having issued a timely deficiency notice, respondent is entitled to issue further deficiency notices, whether related or not to the original deficiencies, without regard to any limitation of time.
Respondent’s position is without merit. In 1978, the statute was amended to require the Attorney-General to issue within 30 days a letter stating that the offering has been filed or, in the alternative, to issue a notice of deficiencies (L 1978, ch 544, § 2). Formerly, the time period had been 15 days. Because of difficulties encountered in responding to a proposed offering filing within even the expanded time frame (see, Matter of Gonkjur Assocs. v Abrams, supra), the statute was again amended to provide that, for buildings occupied for residential purposes, the requisite notice be issued "not sooner than four months and not later than six months from the date of submission” of the offering statement (L 1981, ch 1042, § 1).
Due to the rather short time period in effect prior to the 1981 amendment (30 days) and the evident difficulties experienced by respondent in complying with the statute, the courts adopted the practice of applying the 30-day response period to each submission by a sponsor (Matter of 44 W. 96th St. Assocs. v Abrams, 85 AD2d 563 [1st Dept 1981]). In addition it was held that the Attorney-General need not issue a single comprehensive letter enumerating all of the plan’s deficiencies and might, instead, undertake a " 'two-tiered’ ” review of the offering plan (supra, at 564). The question therefore presented is whether such liberal construction should be accorded the most recent statutory amendment.
This court thinks not. It is clear that section 352-e of the General Business Law was designed to afford a sponsor with an expeditious determination as to whether a proposed offering statement was acceptable or deficient. The relatively short periods originally provided for the Attorney-General to respond attest to the legislative intent. It was only the practical limitations caused by the heavy volume of filings and staffing shortages which required an extension of the time within which the Attorney-General must communicate his approval or disapproval of the sponsor’s submission, first by judicial construction and then by the most recent legislative amendment. While it is clear that the legislation was enacted in response to the holding in Matter of Gonkjur Assocs. v Abrams (supra) that the statutory time limit is mandatory and not discretionary, it is equally clear that it was not intended to produce inordinate delay in the approval of offering plans. The *314 memorandum of Governor Hugh L. Carey dated November 12, 1981 approving the most recent amendment states: "Mindful of the statutory role of the Attorney General in the review process, which is the protection of prospective purchasers, and of the possibility of multiple disapprovals if the 30-day requirement remains, I am supportive of the Attorney General’s request for the enactment of this legislation. I am sure the enactment of the bill will not encourage unnecessary delays in the processing of offering statements — that would not be beneficial to either the offerors of securities or to the offerees and prospective occupants of the premises.” (1982 McKinney’s Session Laws of NY, at 2585.)
It is apparent that the legislation is designed to eliminate the procedure whereby the Attorney-General renders "multiple disapprovals” as in Matter of 44 W. 96th St. Assocs. v Abrams (supra). Reading the statutory amendment together with the Governor’s memorandum, it is also apparent that the six-month provision was intended to place an outside limit on the period within which deficiencies can be raised in objection to a sponsor’s filing.
This is not to suggest that a sponsor may avoid compliance with a deficiency notice by merely delaying his response until after the six-month period has expired. Those deficiencies which are timely noticed must be cured before a plan may be deemed filed. However, the Attorney-General must issue notice of any deficiencies relied upon to delay acceptance of the offering plan within six months of its submission by the sponsor. The period provided for review by the Department of Law is most generous in light of the prior statute. It does not constitute an unfair burden upon respondent to review the offering plan and, within six months, to raise any and all objections to its filing. On the other hand, to permit respondent to delay issuing a deficiency notice until the end of the statutory six-month period and to then raise additional objections to filing, seriatim, over the ensuing months is prejudicial to the right of a sponsor to a reasonably expeditious determination of the adequacy of his offering statement. In the case at bar, respondent’s last deficiency notice was issued 9Vz months after submission of his offering plan. This constitutes an unnecessary and burdensome delay in contravention of the legislative intent as expressed by the Governor’s memorandum.
Respondent argues that acceptance of the offering plan, as presently constituted, for filing should not be required *315 because the plan is in violation of article 23-A of the General Business Law (the Martin Act). This fact, however, does not permit respondent to avoid compliance with the time limitation imposed by section 352-e (2) of the statute. As was recognized by the court in Gonkjur Assocs. (supra), the Attorney-General is not powerless to act once an offering statement is accepted for filing. Sections 353 and 354 of the General Business Law invest that official with broad authority to inquire into possible fraudulent practices in connection with an offering and to enjoin the party from continuing such fraudulent practices or proceeding with the offering. The court emphasized that the powers accorded the Attorney-General under sections 353 and 354 are separate and distinct from those provided in section 352-e: "His acceptance of an offering statement for filing does not signify approval. He may, but is not required to, inquire into the truth, accuracy and fullness of the disclosures made” (82 AD2d 683, 689, supra).
Accordingly, petition granted. The offering plan is deemed accepted for filing and the notices of deficiencies promulgated by respondent subsequent to the notice dated June 17, 1987 are annulled. Petitioner shall comply in all respects with the notice of June 17, 1987 and shall cure all deficiencies noted therein.