OPINION OF THE COURT
Per Curiam.
Final judgment, entered May 13, 2015, affirmed, with $25 costs.
In sustaining the possessory judgment awarded to landlord on the holdover petition, we reject tenant’s specific argument that landlord failed to establish that the apartment’s occupants were not permitted residents pursuant to Real Property Law § 235-f. The trial evidence showed, and it was essentially undisputed, that three unrelated roommates resided with tenant in the subject four-bedroom apartment, in violation of the lease provision limiting occupancy to “tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law § 235-f” (see Roxborough Apts. Corp. v Becker, 296 AD2d 358 [2002]).
We also reject, as did the trial court, tenant’s argument that landlord waived the lease violation, since tenant’s factual arguments in support of his waiver claim are negated by the express language of the lease. The lease expressly provides that “only a written agreement between [tenant] and [landlord] can waive any violation of this lease.” Here, there was no such written agreement. Nor was the violation waived by landlord’s acceptance of rent, since the lease also provided that acceptance of rent does not waive a violation (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442 [1984]; Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d 65 [2003], lv dismissed 2 NY3d 794 [2004]).
Moreover, even assuming that landlord waived any breach of the lease in the past by accepting rent with knowledge of tenant’s multiple unrelated roommates, we reject the argu *78 ment that any such past waiver precludes enforcement of the occupancy restrictions for the duration of the tenancy. The lease provides that
“[e]ven if landlord accepts your rent or fails once or more often to take action against you when you have not done what you agreed to do in this lease, the failure of [landlord] or [landlord’s] acceptance of rent does not prevent [landlord] from taking action at a later date if you again do not do what you have agreed to do.”
This provision is especially applicable here, given the trial evidence that tenant’s current roommates were not the same individuals whose occupancy landlord allegedly waived in prior years.
Finally, while parties to a lease may, by mutual agreement, disregard a no-waiver clause, some performance confirming the modification must be present, and it must be “unequivocally referable to the oral modification” (Rose v Spa Realty Assoc., 42 NY2d 338, 343 [1977]). Here, there was no active involvement of landlord indicating an agreement to modify the lease (see Paramount Leasehold, L.P. v 43rd St. Deli, Inc., 136 AD3d 563, 568-569 [2016]; Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d at 70). At most, tenant has shown only a passive acceptance by landlord of prior instances of multiple roommates (see BDCM Opportunity Fund II, LP v Yucaipa Am. Alliance Fund I, LP, 112 AD3d 509, 511-512 [2013], lv dismissed and denied 22 NY3d 1171 [2014]).
We have considered tenant’s remaining arguments and find them unavailing.